# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARK E. PERRY,** | ) | |
| **Petitioner,** | ) | **Civil Action No. 13-308 Erie** |
| | ) | |
| **v.** | ) | |
| | ) | **Magistrate Judge Susan Paradise Baxter** |
| **COMMONWEALTH, et al.,** | ) | |
| **Respondents.** | ) | |

## OPINION[1]

Presently before the Court is a petition for a writ of habeas corpus filed by Mark E. Perry

pursuant to 28 U.S.C. § 2254. [ECF No. 4]. For the reasons set forth below, the petition is denied. Also,

a certificate of appealability is denied.

## I.

### A.    Relevant Background[2]

Perry was tried and sentenced in the Court of Common Pleas of Erie County. That court

described the relevant facts as follows:

> On June 17, 2010, the petitioner was scheduled to enter a plea. On June 24, 2010, the plea
> hearing was canceled. On July 7, 2010, petitioner's trial counsel, Julia Bagnoni, Esquire,
> moved to continue the trial from the July to the September 2010 term of court. The
> motion was granted and the case was listed for September 13, 2010. However, on August
> 30, 2010, counsel scheduled a plea for September 1, 2010. When the petitioner failed to
> appear on that date, a bench warrant was issued by the Honorable Michael E. Dunlavey
> of this court. Trial was canceled pending the bench warrant. The petitioner was
> apprehended and on September 13, 2010, Judge Dunlavey conducted a bench warrant
> review hearing. At the conclusion of that hearing, he vacated the bench warrant. Trial
> was scheduled for November 8, 2010. A trial subpoena was issued on October 27, 2010.
> On November 2, 2010, trial counsel moved to continue the trial and Judge Dunlavey

---

[1]      In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a
U.S. Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

[2]      Respondents have submitted the Common Pleas Court's file. The documents in that file are indexed and numbered 1
through 74. They shall be cited as "CP Dkt. No. ___ ." Respondents also have submitted the relevant documents filed in
Perry's post-conviction appeal proceeding.

granted the continuance on November 2, 2010. On December 17, 2010, trial counsel once again requested a continuance and Judge Dunlavey granted their continuance on December 21, 2010. Trial was scheduled for March 14, 2011. On that day, the petitioner failed to appear and, for the reasons set forth on the record, trial commenced in his absence before this Court. N.T. 3/14/11 Trial at 3-4. At the conclusion of the trial, the jury found the petitioner guilty of possessing a small amount of marijuana and corruptions of minors (non-sexual). The trial evidence indicated that on July 4, 2009, the petitioner provided his son with marijuana. Id. at 15-49. At the conclusion of the trial, the Court set sentencing for May 18, 2011.

A bench warrant was issued for the petitioner's failure to appear. He was apprehended and this Court conducted a bench warrant review hearing on March 15, 2011. The bench warrant was lifted and bond was set at ten thousand dollars ($10,000.00), cash or property bond. At the conclusion of the trial, sentencing was set for May 18, 2011. On March 16, 2011, the petitioner posted bail. On March 24, 2011, trial counsel filed a motion for a new trial that was denied by this Court on March 25, 2011. On May 18, 2011, sentence was imposed in the petitioner's absence when he failed to appear for sentencing. As the record indicates, the sentence was in the standard range of the sentencing guidelines. Based upon the petitioner's prior record score of five, the guidelines for the corruption charge were significant in spite of the fact that the offense itself was not the most serious.

(CP Dkt. No. 65 at 1-2).

Perry pursued a direct appeal with the Superior Court of Pennsylvania. Following a Grazier hearing, Perry's request to represent himself in that appeal was granted. (CP Dkt. No. 48). However, on April 18, 2012, Perry filed with the Superior Court a motion requesting that his direct appeal be discontinued without prejudice to his right to seek relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq.* The Superior Court granted his request and discontinued his direct appeal. (CP Dkt. No. 61).

In his PCRA petition, Perry claimed that his trial counsel was ineffective because it was her fault that he was not present at his trial. (CP Dkt. No. 62). The court appointed William J. Hathaway, Esquire, to represent Perry. Hathaway filed a supplemental PCRA motion in which he sought an evidentiary hearing to address the underlying issues of fact. (CP Dkt. No. 64). On July 9, 2012, the PCRA court denied relief without a hearing. (CP Dkt. Nos. 65 & 66).

Perry, through Hathaway, filed an appeal with the Superior Court of Pennsylvania. On February

5, 2013, the Superior Court affirmed the PCRA court's decision. It held:

> Perry's PCRA claim raises an issue of ineffective assistance of counsel. In Pennsylvania, counsel is presumed to be effective, and the burden is on the petitioner to prove to the contrary. Commonwealth v. King, __ A.3d __, 2012 WL 6015050 (Pa., November 26, 2012). To prove ineffectiveness, a petitioner must show that: (1) the claim of counsel's ineffectiveness has merit; (2) counsel had no reasonable strategic basis for his action or omission; and (3) that the error of counsel prejudiced the petitioner so that there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. See, e.g., Commonwealth v. Natividad, 595 Pa. 188, 207, 938 A.2d 310, 321 (2007). The PCRA court may deny an ineffectiveness claim if the petitioner fails to satisfy any one of these three prongs. Id.

> In this case, the PCRA court found that Perry's claim of ineffectiveness lacked merit without a PCRA evidentiary hearing. However, an evidentiary record was previously established on this precise issue at the warrant review hearing held the day after his failure to appear at trial. Based upon that record, the PCRA court found Attorney Bagnoni's explanation of events regarding her efforts to notify Perry of his trial date to be credible, and Perry's contrasting explanation for his failure to appear to be incredible. Perry contended that the notification by mail must have been sent to the wrong address, and that his cell phone had been turned off during the days immediately before trial. N.T., 3/15/11, at 3. He further stated that he left a message for Attorney Bagnoni at around 8:30 a.m. on the day of the trial, thinking that her secretary would get the message to her, but that she did not return the call until 3:00 p.m. that afternoon. Id. at 3-4. Perry informed the court that, but for the lack of notice, he was fully prepared to attend and participate in the jury trial. Id.

> In contrast, Attorney Bagnoni offered the following explanation of events:

> > I had a telephone number for him, and I did tell him that I needed to contact him within this two week period of time. I called the telephone number, it was invalid. I had a couple different numbers from the times before trying to locate my client, invalid, disconnected, addresses as well invalid. I asked – also asked Mr. Perry for a valid address, a location where I could locate him so I could go there physically knowing that – knowing the history of not being able to locate him by telephone, and he couldn't give me a valid address other than a valid mailing address. He did say that he was a student at the Erie Business Center and that he was there every single day. So in addition to trying to contact him via telephone, I called the Erie Business Center that morning, and at 8:30 Mr. Perry did call my office as recorded on my answering machine at approximately 8:40.

Id. at 4-5.

3

On appeal, Perry contends that the PCRA court erred in not conducting a separate evidentiary hearing after the filing of his PCRA petition so that he could "create a factual foundation" in support of his claims and provide "a factual record that may be taken up for prospective appellate review." Perry's Brief at 3-4. Based upon the unique circumstances of this case, we disagree. The certified record on appeal contains adequate support for the PCRA court's findings of fact, including its finding that Attorney Bagnoni was not ineffective in her efforts to notify Perry of his trial date. Both Perry and Attorney Bagnoni offered the PCRA court with their contrasting explanations of events, and the PCRA made credibility determinations based upon these explanations. Because the PCRA court's decision is supported by evidence of record and is free of any legal error, we have no basis to disturb it on appeal. Requiring the PCRA court to conduct another evidentiary hearing, the outcome of which would be a foregone conclusion, would be a waste of judicial resources and is unnecessary under the circumstances presented here.

(CP Dkt. No. 74 at 4-6).

Perry, through Hathaway, filed a petition for allowance of appeal with the Supreme Court of Pennsylvania, which was denied on August 15, 2013. (CP Dkt. No. 73).

On or around October 25, 2013, Perry filed the instant petition for a writ of habeas corpus with this Court. [ECF No. 4]. He contends that his constitutional rights were violated because he was tried in abstentia. He also argues that his trial counsel was ineffective. On December 19, 2013, Respondents filed their answer. [ECF No. 11]. Perry did not file a Reply. See Local Rule 2254(E)(2) (a petitioner "may file a Reply ... within 30 days of the date the respondent files its Answer.").

**B.** **Discussion**

Respondents contend that Perry's claim that he was tried in absentia in violation of his federal constitutional rights must be denied because Perry failed to exhaust it and, therefore, he procedurally defaulted it. Respondents are correct. The U.S. Court of Appeals for the Third Circuit has explained, "[i]t is axiomatic that a federal habeas court may not grant a petition for a writ of habeas corpus unless the petitioner has first exhausted the remedies available in the state courts." Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997) (citing 28 U.S.C. § 2254(b)(1)(A)). Specifically, "state prisoners must give

the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999). The petitioner carries the burden of proving exhaustion of all available state remedies. See, e.g., Lambert, 134 F.3d at 513.

This exhaustion requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." Coleman v. Thompson, 501 U.S. 722, 731 (1991). See also O'Sullivan, 526 U.S at 842-49. The requirement is:

> principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. See Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 490-491, 93 S.Ct. 1123, 1127, 35 L.Ed.2d 443 (1973). Under our federal system, the federal and state "courts [are] equally bound to guard and protect rights secured by the Constitution." Ex parte Royall, 117 U.S. [241, 251, 6 S.Ct. 734, 740 (1886)]. Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter." Darr v. Burford, 339 U.S. 200, 204, 70 S.Ct. 587, 590, 94 L.Ed. 761 (1950). See Duckworth v. Serrano, 454 U.S. 1, 3, 102 S.Ct. 18, 19, 70 L.Ed.2d 1 (1981) (per curiam) (noting that the exhaustion requirement "serves to minimize friction between our federal and state systems of justice by allowing the State an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights").

Rose v. Lundy, 455 U.S. 509, 517 (1982) (footnote omitted).

Importantly, in order to exhaust a claim, a petitioner must "fairly present" it to each level of the state courts. See, e.g., Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000) (citing 28 U.S.C. § 2254(b)); O'Sullivan, 526 U.S. at 848. See also Brian Means, Federal Habeas Manual § 9C:17 (2013), available at Westlaw FEDHABMAN. In Pennsylvania, this requirement means that a petitioner in a non-capital case must have presented every federal constitutional claim raised in his habeas petition to the Common

Pleas Court and then to the Superior Court either on direct or PCRA appeal. See, e.g., Lambert v. Blackwell, 387 F.3d 210, 233-34 (3d Cir. 2004). Federal Habeas Manual § 9C:17.

Perry has failed to meet his burden of proving that he exhausted his claim. If he raised it in his direct appeal, he abandoned it when he voluntarily requested that that direct appeal be discontinued so that he could seek PCRA relief. Because Perry did not exhaust his claim, it is procedurally defaulted. See, e.g., Lines, 208 F.3d at 160; Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000). Like the exhaustion doctrine, the doctrine of procedural default is "grounded in concerns of comity and federalism," Coleman, 501 U.S. at 730, and it bars federal habeas review of a claim whenever the petitioner failed to raise it in compliance with a state's procedural rules. Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Wainwright v. Sykes, 433 U.S. 72 (1977); Lines, 208 F.3d at 162-69.[3]

Perry also is raising the ineffective assistance of counsel claim that he raised in his PCRA proceeding. Because the Superior Court rejected it on the merits, this Court's analysis of it is governed by the Antiterrorism and Effective Death Penalty Act's ("AEDPA's") standard of review. Thus, it is not for this Court to decide whether the Superior Court's decision was right or wrong. Rather, this Court would have the authority to issue the writ of habeas corpus only if its adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an

---

[3]     A petitioner whose habeas claim is procedurally defaulted can overcome the default, thereby allowing federal court review, if he can demonstrate "cause" for the default, i.e., that some objective factor "external to the defense" impeded efforts to comply with the state's procedural rule, and "actual prejudice." See, e.g., Coleman, 501 U.S. at 750; Martinez v. Ryan, — U.S. —, 132 S.Ct. 1309 (2012); Murray v. Carrier, 477 U.S. 478, 488, 494 (1986). A petitioner may also overcome a procedural default of a claim if he can demonstrate a "miscarriage of justice." This exception provides that a procedural default may be excused if the petitioner presents evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" Schlup v. Delo, 513 U.S. 298, 316 (1995). It only applies in extraordinary cases where the petitioner demonstrates that a constitutional violation has probably resulted in the conviction of one who is actually innocent. Id.; Hubbard, 378 F.3d at 339-40. Petitioner does not argue that he can overcome the default of his claim under either of these exceptions.

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2).

The "clearly established Federal law," 28 U.S.C. § 2254(d)(1), in which to analyze an ineffective assistance claim is governed by Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, Perry must show that his trial counsel's representation fell below an objective standard of reasonableness. 466 U.S. at 688; see also Williams, 529 U.S. at 390-91. The law presumes that counsel was effective. Id. at 689. Strickland also requires that Perry demonstrate that he was prejudiced by his counsel's alleged deficient performance. This requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of [his trial] proceeding would have been different." Id. at 694. See also Brown v. Wenerowicz, 663 F.3d 619, 630 (3d Cir. 2011).

Since the Superior Court applied the correct legal standard when it evaluated Perry's ineffective assistance claim,[4] there can be no question that its adjudication withstands review under the "contrary to" clause of § 2254(d)(1). Williams, 529 U.S. at 406 ("a run-of-the mill state-court decision applying the correct legal rule from [Supreme Court] cases [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause."). The only question that remains for this Court to resolve is whether the Superior Court's adjudication of this claim was an "unreasonable application of" Strickland or an unreasonable determination of the facts. 28 U.S.C. § 2254(d). The Supreme Court has stressed the "highly deferential" review that this Court must accord the state court in conducting its analysis:

> We have explained that "an unreasonable application of federal law is different from an incorrect application of federal law." Williams v. Taylor, 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Indeed, "a federal habeas court may not issue the writ

---

[4]     Pennsylvania law for judging ineffectiveness corresponds with the Strickland standard. Commonwealth v. Pierce, 527 A.2d 973, 976-77 (Pa. 1987); Commonwealth v. Kimball, 724 A.2d 326 (Pa. 1999). Although Pennsylvania courts typically articulate a three-prong test for gauging ineffective assistance claims and Strickland sets forth its test in two prongs, the legal evaluation is the same, and the differences merely reflect a stylistic choice on the part of state courts.

simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id., at 411, 120 S.Ct. 1495. Rather, that application must be "objectively unreasonable." Id., at 409, 120 S.Ct. 1495. This distinction creates "a substantially higher threshold" for obtaining relief than *de novo* review. Schriro v. Landrigan, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). AEDPA thus imposes a "highly deferential standard for evaluating state-court rulings," Lindh v. Murphy, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and "demands that state-court decisions be given the benefit of the doubt," Woodford v. Visciotti, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam).

Renico v. Lett, 559 U.S. 766, 773 (2010). See also Harrington v. Richter, — U.S. —, 131 S.Ct. 770, 786 (2011) ("If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings…. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther."). The Supreme Court emphasized that same theme in its recent decision, Burt v. Titlow, — U.S. — , 134 S.Ct. 10 (2013):

AEDPA recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights. "[T]he States possess sovereignty concurrent with that of the Federal Government, subject only to limitations imposed by the Supremacy Clause. Under this system of dual sovereignty, we have consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States." Tafflin v. Levitt, 493 U.S. 455, 458, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990). This principle applies to claimed violations of constitutional, as well as statutory, rights. See Trainor v. Hernandez, 431 U.S. 434, 443, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977). Indeed, "state courts have the solemn responsibility equally with the federal courts to safeguard constitutional rights," and this Court has refused to sanction any decision that would "reflec[t] negatively upon [a] state court's ability to do so." Ibid. (internal quotation marks omitted)….

Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error ... beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. —, — 131 S.Ct. 770, 786-

787, 178 L.Ed.2d 624 (2011). "If this standard is difficult to meet" – and it is – "that is because it was meant to be." Id., at —, 131 S.Ct., at 786. We will not lightly conclude that a State's criminal justice system has experienced the "extreme malfunctio[n]" for which federal habeas relief is the remedy. Id., at —, 131 S.Ct., at 786 (internal quotation marks omitted).

Burt, 134 S.Ct. at 15-16. This Court also is mindful that:

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," [Strickland, 466 U.S.] at 689, 104 S.Ct. 2052; Lindh v. Murphy, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, [Knowles v. Mirzayance, 556 U.S. at —, 129 S.Ct. 1411, 1420 (2009)]. The Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at —, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard*.

Harrington, 131 S.Ct. at 788 (emphasis added).

There is no basis whatsoever for this Court to conclude that the Superior Court's adjudication was either an "unreasonable application of" Strickland or an unreasonable determination of the facts. 28 U.S.C. § 2254(d). Moreover, the state court made credibility determinations that are fatal to Perry's contentions, and this Court must defer to those determinations. See e.g., Rompilla v. Horn, 355 F.3d 233, 252-53 (3d Cir. 2004), rev'd on other grounds sub nom., 545 U.S. 374 (2005); Weeks v. Snyder, 219 F.3d 245, 259 (3d Cir. 2000).

In conclusion, for the reasons set forth above, the petition for a writ of habeas corpus is denied.


**C.**     **Certificate of Appealability**

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. 28 U.S.C. § 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the

denial of a constitutional right." "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. Applying those standards here, jurists of reason would not find it debatable whether Perry's claims should be denied. Accordingly, a certificate of appealability should be denied.

## II.

For the reasons set forth above, the petition for a writ of habeas corpus is denied. Also, a certificate of appealability is denied. An appropriate Order follows.


/s/ Susan Paradise Baxter

Dated: January 13, 2014      SUSAN PARADISE BAXTER
United States Magistrate Judge

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARK E. PERRY,                    )
     Petitioner,              )          Civil Action No. 13-308 Erie

     v.                       )

                              )          Magistrate Judge Susan Paradise Baxter

COMMONWEALTH, et al.,             )
     Respondents.             )

## ORDER

AND NOW, this 13th day of January, 2014;

IT IS HEREBY ORDERED that the petition for a writ of habeas corpus is DENIED and a certificate of appealability is DENIED. The Clerk of Courts is directed to close this case.


                    /s/ Susan Paradise Baxter
                    SUSAN PARADISE BAXTER
                    United States Magistrate Judge